IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TYCO VALVES & CONTROLS   )
DISTRIBUTION GmbH,       )
         Plaintiff,      )
                         )
     v.                  )   Civil Action No. 04-1626
                         )
TIPPINS, INC.,           )
         Defendant.      )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Court Judge.                     October 10, 2006

This is a breach of contract action. Plaintiff, Tyco Valves & Controls Distribution GmbH ("Tyco"), brings this action against defendant, Tippins, under the Uniform Money Judgments Recognition Act ("UFJRA"), 42 P.S. §§22001 et seq. Plaintiff alleges that a regional court in Germany entered a default judgment in plaintiff's favor because defendant owed plaintiff money for goods purchased between April 1998 and January 1999. Plaintiff now seeks to enforce the German judgment, and asks this court to enter a judgment equaling the U.S. dollar equivalent of the German judgment, plus interests, costs, and fees.

Before the court are the parties' cross motions for summary judgment [doc. nos. 12 and 15, respectively]. Both motions turn on the terms of the parties' agreement, specifically an arbitration clause. In its motion for summary judgment,

defendant argues that the default judgment entered by the German court is contrary to a valid, enforceable arbitration agreement between the parties. Defendant further argues that under the Pennsylvania UFJRA, a foreign judgment need not be recognized if the proceeding in the foreign court (in this case, Germany) was contrary to an agreement between the parties under which the dispute in question was to be settled.

Plaintiff counters that it is entitled to full enforcement of the German judgment under the UFJRA because the arbitration clause upon which defendant relies was not part of the parties' final agreement. Specifically, plaintiff claims that there was no express agreement between the parties to arbitrate their disputes, and that the arbitration clause upon which defendant relies appears only in defendant's pre-purchase order documentation, which did not become part of the parties' final agreement. Thus, the arbitration clause would not bar recognition and enforcement of the German judgement.

For the reasons that follow, we will grant defendant's motion for summary judgment.

I. FACTUAL BACKGROUND

All material facts discussed herein are undisputed unless otherwise indicated.

This dispute arises out of a contract for the sale of goods between plaintiff and defendant for the purchase of valves and related equipment for the construction of a flat roll mini mill for a third entity, Nova Hut, in Ostrava, Czech Republic. In early 1998, defendant contacted plaintiff to inquire about purchasing high performance valves. On March 26, 1998, Cathy L. Rochna, a purchasing agent for defendant, sent a letter to plaintiff enclosing the following documents: Standard General Conditions Nova Hut Purchase Order, Special Conditions of Purchase ("Standard General Conditions"), Request for Quotation-Technical Scope of Work, Request for Quotation-Commercial Requirements, and Draft Letter of Credit. Ms. Rochna's March 26, 1998 enclosure letter stated, "[i]t is very important...I receive the following documentation back from you with each page initialled [sic]. Exceptions must be taken at this time....It is a very important part of any order placed on this particular job." The documentation sent by Ms. Rochna to plaintiff did not contain prices or quantities of items defendant sought to purchase.

On March 30, 1998, Miroslav Franc, a branch manager for plaintiff,[1] wrote to Ms. Rochna, enclosing signed copies of

---

[1] In his memo, Mr. Franc identifies himself as the person responsible for plaintiff's activities in Czech

(continued...)

defendant's documents, including the Standard General Conditions. Per Ms. Rochna's instructions, Mr. Franc signed off on each page of defendant's documents. In his March 30, 1998 enclosure memo to Ms. Rochna, Mr. Franc wrote, "I understand that to continue in this job you ask us to confirm your conditions, sending it back. I do it with my sign [sic] on each page and I expect to precise the order conditions, when order comes."

Section 2 of defendant's Standard General Conditions form provides:

> This Purchase Order, together with the documents attached hereto or incorporated herein by reference, shall constitute the entire agreement and authorization of the parties and may not be modified except by written change order issued by TIPPINS. No terms stated by SELLER in its proposal or in acceptance or acknowledging this Purchase Order shall be binding except as expressly incorporated herein or in another written document by TIPPINS, and SELLER is hereby notified of TIPPINS' objection to and rejection of any additional or different terms in SELLER'S quotation, acknowledgment, invoice, or other forms. TIPPINS' PURCHASE ORDER IS EXPRESSLY LIMITED TO ACCEPTANCE UPON THESE TERMS AND CONDITIONS WHICH TAKE PRECEDENCE OVER ANY TERMS AND CONDITIONS WRITTEN ON THE BACK OF THE PURCHASE ORDER.

The Standard General Conditions form also contains an arbitration clause. Section 21.2 states that "any claims, disputes and other matters in question shall be solely decided by

---

[1](...continued)
Republic. He states, "together with Mr. Demjen we will cooperate with you in technical details and commercial matters regarding this project."

arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce." Moreover, section 21.4 established that the arbitration shall take place in Vienna, Austria. It states:

> This provision shall be specifically enforceable in any court of competent jurisdiction. The place in which the Arbitration shall be held shall be Vienna, Austria. The language and form of the Contract to be utilized in arbitration shall be at all times the English Language, and the applicable law shall be the law of The Republic of Austria. This Purchase Order shall be governed under the laws of the Republic of Austria.

On April 15, 1998, defendant issued to plaintiff purchase order no. 21900-67309. Purchase order no. 21900-67309 listed a total price of $335,424.10. Page 10 of the purchase order explicitly stated:

> TIPPINS PURCHASE ORDER IS EXPRESSLY LIMITED TO ACCEPTANCE OF "STANDARD GENERAL CONDITIONS NOVA HUT PURCHASE ORDER" AND SPECIAL CONDITIONS OF THE PURCHASE, WHICH WILL TAKE PRECEDENCE OVER ANY TERMS AND CONDITIONS WRITTEN ON THE BACK OF THE PURCHASE ORDER.

Although purchase order no. 21900-67309 made reference to the Standard General Conditions, defendant did not attach a copy of the Standard General Conditions to the April 15, 1998 purchase order. The purchase order did indeed contain its own "Terms and Conditions of Sale" on the reverse side. The terms and conditions on the back of defendant's April 15, 1998 purchase

order stated, "the contract shall be construed in accordance with the laws of the Commonwealth of Pennsylvania." Plaintiff contends that this provision conflicts with the arbitration clause contained in the Standard General Conditions. Defendant argues that the April 15, 1998 purchase order and the Standard General Conditions both state that terms of the Standard General Conditions govern and take precedence over any terms and conditions written on the back of defendant's purchase order.

Over the next several days, the parties clarified specific provisions of the order, including a new payment schedule, shipping details and delivery date for the goods, paint, and working conditions. Although several change orders were issued by defendant, at no time did plaintiff assert any specific exception or objection to any of the terms listed in defendant's Standard General Conditions. Indeed, on July 3, 1998, on behalf of plaintiff, Mr. Franc sent Ms. Rochna a copy of change order no. 2 with a handwritten note, which stated, "as this has not been negotiated, we will proceed according to [Tyco] standard terms." On behalf of defendant, Ms. Rochna responded as follows:

> Dear Mr. Franc:
> I had received you [sic] acknowledgment under c.o. #2 for purchase order #21900-67309. You had stated on the purchase order "As this has not been negotiated, we will proceed according to [Tyco] Standard Terms." Please be aware Mr. Franc that prior to order placement, I had sent Tippins' terms and conditions to you and had asked that you sign the documents with

> exceptions taken at that time. You had signed all documentation which indicated you were in agreement with our terms. I am a bit confused. Please respond.

In response to Ms. Rochna's email, on behalf of plaintiff, Mr. Franc wrote:

> I suppose, that we continue in our agreement, where only different payment conditions have been confirmed by our managers (J. Porter and K. Baier) and original [Tyco] painting has been agreed between us. The valves are manufactured according to time schedule, we have ordered and have acknowledged all accessories and for shipment we accept your documentation and shipment instruction.

The goods ordered by defendant were shipped by plaintiff to the Czech Republic in December 1998 and January 1999. The goods were received by defendants. According to plaintiff, defendant paid the first two installments under the contract via wire transfer to plaintiff's office in Germany, but defendant did not make the third payment in the principal amount of $167,933.45. Defendant also did not pay any portion of change order no. 4 in the amount of $10,802.[2] Plaintiff also alleges that defendant was paid in full for the Tyco valves and related equipment by the general contractor for the Nova Hut Project in the Czech Republic. Defendant has acknowledged that it did not pay the full amount owed to plaintiff.

---

[2] The amount due under change order no. 4 was designated internally by plaintiff as a "new order" by defendant.

In an attempt to collect the outstanding balance, plaintiff filed Summary Proceedings in the District Court of Monchengladbach, Germany. Plaintiff claims that jurisdiction was proper based on its standard Terms and Conditions of Sale and the United Nations Convention on the International Sale of Goods ("CISG"), Article 57.  The German court effected service on defendant, and defendant sent a letter to the court requesting a forty-five day extension to respond and advising the court of the arbitration provision contained in the Standard General Conditions.  However, defendant did not respond to the complaint or attend a conciliation conference before the German court on November 6, 2002.  The German court entered a default judgment against defendant for $192,351.68, plus 5% accruing interest from each outstanding payments' respective due date.  The German judgment is final, as there is no appeal pending.

On October 25, 2004, plaintiff filed its complaint in this court, asking that we enforce the German judgment in full.

II.  STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving

party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit").

The non-moving party has the burden of producing evidence to establish each element of her claim. Celotex, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. Anderson, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec., 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material

facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor. It is on this standard that the court has reviewed the parties' cross motions for summary judgment and responses thereto.

III.   DISCUSSION

Based on the parties' cross motions for summary judgment, at issue is whether there was a valid agreement and whether that agreement contained a binding arbitration clause. For the reasons set forth below, we find that summary judgment in defendant's favor is appropriate here because plaintiff accepted and confirmed defendant's Standard General Conditions by initialing each page of the document and returning it to defendant per defendant's instructions, and because the Standard General Conditions require that any dispute between the parties must be submitted to arbitration in Vienna, Austria. As such, we decline to enforce the German judgment because the parties agreed to resolve all disputes through arbitration.

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."   <u>AT & T Technologies, Inc. v.</u>

11

Communications Workers of America, 475 U.S. 643, 648 (1986) (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Accordingly, "'whether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.'" Id. at 649 (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547 (1964)).

In resolving the arbitrability of a particular claim, however, "a court is not to rule on the potential merits of the underlying claims," no matter how frivolous the claims may appear to the court. Id. at 649. Moreover, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" Id. at 650 (quoting Warrior & Gulf, 363 U.S. at 582-83). This presumption not withstanding, "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." PaineWebber Inc. v. Hartmann, 921 F.2d 507, 513 (3d Cir. 1990). "If the court determines that . . . the matter at issue clearly falls outside of the substantive scope

of the agreement, it is obliged to enjoin arbitration." Id. at 511.

Defendant has presented adequate evidence to demonstrate the parties' intent to be bound by the Standard General Conditions, including the arbitration clause contained therein. There is no genuine issue of material fact that defendant sent and plaintiff received the Standard General Conditions. There is also no dispute of fact that plaintiff's representative, Mr. Franc, signed each page of the Standard General Conditions per defendant's request. It is also undisputed that defendant notified plaintiff that any exceptions or changes to the Standard General Conditions were to be noted at the time the documents were returned to defendant. Plaintiff signed and returned defendant's documents without exception. Moreover, the purchase order itself clearly states that defendant's purchase was expressly limited to plaintiff's acceptance of the Standard General Conditions, and that the Standard General Conditions took precedence over any terms and conditions written on the back of the purchase order form. The evidence shows that defendant was consistent in informing plaintiff that the Standard General Conditions governed the parties' transaction.

We find the July 3, 1998 correspondence between the parties regarding paint and payment conditions particularly convincing

of the fact that the parties were aware that the Standard General Conditions governed their transactions. Upon receipt of Mr. Franc's handwritten note on change order no. 2 stating that since certain terms had not been negotiated, plaintiff would proceed according to Tyco's standard terms, Ms. Rochna advised Mr. Franc that the Standard General Conditions applied. She stated, "prior to order placement, I had sent Tippins' terms and conditions to you and had asked that you sign the documents with exceptions taken at that time. You had signed all documentation which indicated you were in agreement with our terms." Mr. Franc then acknowledged that he had signed off on the Standard General Conditions and responded, "we accept your documentation."

It is also undisputed that section 21 of the Standard General Conditions set forth a mandatory, broad arbitration provision. The arbitration provision covers any disputes and other matters in question arising out of the transaction. Clearly, non-payment of invoices, as alleged by plaintiff here, would be covered by the broad arbitration clause.

The Court of Appeals for the Third Circuit instructs that in considering whether to enforce an arbitration clause, the threshold inquiry is whether plaintiff acceded to a binding arbitration clause. <u>Standard Bent Glass Corp. v. Glassrobots Oy</u>, 333 F.3d 440, 447 (3d Cir. 2003). We find that plaintiff's act

of signing each page of defendant's Standard General Conditions constituted an agreement.  At the time plaintiff accepted defendant's Standard General Conditions, which clearly contained an agreement to arbitrate, defendant did not object to the arbitration clause--or any other term for that matter. Plaintiff's failure to object to the arbitration provision set forth in the Standard General Conditions, "absent surprise or hardship, makes those terms part of the contractual agreement." Standard Bent Glass, 33 F.3d at 448.

Because this case involves an international commercial agreement, we must also look to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("CREFAA"), 9 U.S.C. §§ 201-208; Standard Bent Glass, 33 F.3d at 449.  We note that the CREFAA reinforces a strong federal policy in favor of arbitration over litigation.  Standard Bent Glass, 33 F.3d at 450.  "This policy applies with special force in the field of international commerce."  Id.; Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc., 473 U.S. 614, 631 (1985). Where a dispute arises from an international commercial agreement, a court must address the following four factors to determine whether the arbitration agreement falls under CREFAA:

   (1)  Is there an agreement in writing to arbitrate the
        subject of the dispute?

      (2)   Does the agreement provide for arbitration in the territory of a signatory of the Convention?

      (3)   Does the agreement arise out of a legal relationship, whether contractual or not, which is considered commercial?

      (4)   Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?

Standard Bent Glass, 33 F.3d at 448. "If the answers are all in the affirmative, the court must order arbitration unless it determines the agreement is null and void." Id.

Here, the second, third and fourth inquiries are easily answered in the affirmative. The agreement provides for arbitration in Austria, which is a signatory of the Convention. The agreement arises out of commercial transaction for the international sale of goods, and the commercial relationship has some reasonable relation with at least one foreign state, i.e., the Czech Republic, where the plant was being constructed. As such, the only remaining question is whether there is an agreement in writing to arbitrate the present dispute.

Article II, section 2 of the CREFAA provides, "the term 'agreement in writing' shall include an arbitral clause in contract or an arbitration agreement, signed by the parties or

16

contained in an exchange of letters or telegrams." Here, we need not engage in a detailed contractual analysis to determine that the parties entered into an agreement in writing. The evidence clearly demonstrates that defendant forwarded its Standard General Conditions to plaintiff and indicated that by signing each page, plaintiff was accepting defendant's terms. Plaintiff did so. The Standard General Terms included an agreement to arbitrate, which plaintiff did not object to. As such, we conclude that the parties entered into an agreement in writing to arbitrate the present dispute. Because we have answered all four questions in the affirmative, we are content that the agreement falls under the CREFAA, and we must order arbitration. Standard Bent Glass, 33 F.3d at 448.

Because the German proceeding was contrary to the parties' agreement to arbitrate, we decline to enforce it here. Pursuant to the Pennsylvania UFJRA, we need not recognize a foreign judgment if "the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court." 42 P.S. §§22004(5). As such, defendant's motion for summary judgment is granted, and plaintiff's complaint seeking enforcement of the German judgement is hereby dismissed.

IV.  CONCLUSION

For the foregoing reasons, summary judgment will be entered in defendant's favor.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYCO VALVES & CONTROLS DISTRIBUTION GmbH,<br>          Plaintiff,<br><br>     v.<br><br>TIPPINS, INC.,<br>          Defendant. | Civil Action No. 04-1626 |

ORDER

AND NOW this 10th day of October, 2006, IT IS HEREBY ORDERED that defendant's motion for summary judgment [doc. no. 12] is GRANTED.  Plaintiff's motion for summary judgment [doc. no. 15] is DENIED.

Judgment shall be entered in defendant's favor, and the Clerk of Court is directed to mark this matter as closed.

BY THE COURT,

_____

cc:  All Counsel of Record